Joseph G. Rosania, Jr., United States Bankruptcy Judge
Dr. Michael David Galvin ("Dr. Galvin"), Debtor herein, filed for relief under Chapter 13 of the Bankruptcy Code. At the time of filing, Dr. Galvin, and his non-filing spouse, Jeanne Galvin, owned a model year 2017 Winnebago Navion 24J motor home or recreational vehicle ("RV"). Mr. Galvin listed the RV on Schedule A/B: Property and claimed the RV completely exempt as a homestead under Colorado law on Schedule C. The Chapter 13 Trustee, Douglas B. Kiel ("Trustee"), filed an objection to the claimed exemption and Dr. Galvin responded. The Court conducted an evidentiary hearing on the objection and response at which Dr. Galvin testified.
The issue is whether the Colorado homestead exemption extends an exemption to protect a debtor's interest in a motor home. The Court concludes it does not. The dispute involves the allowance or disallowance of a claimed exemption in property of the bankruptcy estate and the Court has subject matter jurisdiction over this contested matter under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and 28 U.S.C. §§ 157(b)(1), (b)(2)(A)(B) and (O).
BACKGROUND
Dr. Galvin is a mental health professional. He was licensed as a psychologist in Colorado in 1977 and practiced in Colorado for many years through an entity known as Michael D. Galvin, Ph.D., PC. The PC ceased operations in 2016, but Dr. Galvin continues to see at least one patient on a part-time basis in the Colorado Springs area.
In 1984, Dr. Galvin and his wife purchased a home in north Colorado Springs where they resided until the summer of 2016. Approaching retirement, they determined they could no longer afford to stay in the home. In anticipation of entering this new phase in their lives, they began liquidating assets.
In March 2016, Dr. Galvin and his former business partner sold the commercial real estate in which the therapy business was operated. After paying the costs of sale, Dr. Galvin's share of the proceeds was approximately $126,000. These proceeds would not have been exempt from execution under applicable Colorado law.
In early July 2016, the Galvins sold a 2002 Volvo V40 to a former neighbor for $2,000. On July 13, 2016, they closed on the sale of their former residence and received net proceeds of approximately $19,000.00.
With the proceeds, the Galvins purchased the RV and a Mercedes-Benz *264 Smartcar titled solely in the name of Jeanne Galvin.
Dr. Galvin's bankruptcy case was filed in April 2017. He scheduled general unsecured debts as follows. No priority or secured claims were listed.
Creditor Basis Amount American Express Credit Card Debt $12,166.00 Bank of America Credit Card Debt $41,939.00 Chase Bank Credit Card Debt $6,018.00 Chase Bank Credit Card Debt $18,460.00 Citi/AT&T Credit Card Debt $6,496.00 Discover Card Credit Card Debt $19,050.00 Wells Fargo Business Credit Card Debt $2,937.00 Wells Fargo PLL Monies Loaned/Advanced $2,573.00 TOTAL $109,639.00
Dr. Galvin scheduled assets in the total amount of $190,032. In addition to the RV he valued at $93,000, he listed:
(i) Household goods and furnishings valued at $1,500;
(ii) Electronics valued at $500.00;
(iii) Sporting goods and hobby equipment valued at $1,800;
(iv) Clothing valued at $100;
(v) Jewelry valued at $1,200.00;
(vi) Cash and bank account balances totaling $400;
(vii) IRA with a balance of $83,000; and,
(viii) Life insurance policy with a surrender value of $6,530.
Dr. Galvin also listed monthly social security income in the amount of $2,002. All of the above property was claimed as exempt with the exception of the cash and bank account balances. The only challenged exemption concerns the RV.
Dr. Galvin's Chapter 13 Plan proposes to make payments of $200 per month for thirty-six months. The total amount to be paid into the plan is anticipated to be $7,200. After the payment of attorney's fees and costs and the Trustee commission, unsecured creditors would receive a total dividend of $1,300.
Timely-filed Proofs of Claim filed in the case total $34,533.67. Under the proposed plan, unsecured creditors will receive a pro-rata dividend of approximately 3 cents on the dollar (3%).
Chapter 13 allows debtors to retain the use and control of property of the estate. In exchange, future income is contributed to a plan and used to pay creditors. 11 U.S.C. § 1325(a)(4) requires unsecured creditors receive payments under a plan of not less than would be received on account of each respective claim in a hypothetical Chapter 7 liquidation. If the RV is exempt, Dr. Galvin's plan satisfies this "best interests of creditors" test. If the RV is not exempt, creditors holding allowed claims would be paid in full in a hypothetical Chapter 7 case, and the proposed plan cannot be confirmed.
THE RV
The RV was purchased new in the summer of 2016 using the proceeds from the sales of the commercial real estate and former residence. By claiming the RV as exempt as a homestead, Dr. Galvin seeks to shelter the otherwise non-exempt proceeds from the sale of the commercial real estate from creditors. Because the Court concludes the RV is not exempt, the issue *265 of whether the bankruptcy case was filed in good faith need not be addressed.
The RV is a Winnebago model 24J built on a Mercedes-Benz Sprinter chassis and has amenities similar to a home. It has sleeping quarters with a queen size bed, televisions, a dining area and kitchenette with a cooktop, microwave oven, refrigerator, sink, a second bathroom sink, and a shower and toilet.
The RV has heating and air conditioning systems. It has plumbing and electrical systems capable of being "hooked up" to external sources.
The RV is approximately twenty-five (25) feet in length, has a wheel base of 170 inches and has a gross vehicle weight rating of 11,030 pounds.
Dr. Galvin testified that he and his wife resided in the RV on the date he filed bankruptcy. He indicated that, after closing on the sale of their former home, he and his wife have spent all but a few nights living in the RV. He testified it was their intent to use the RV as their home moving forward. The Trustee does not contest that the Galvins utilize the RV as their home.
It is also uncontested that the RV has a motor (providing motive power), can be driven on roads and highways, and is capable of traveling in excess of 70 miles per hour.
Between the time of purchase and the bankruptcy filing, roughly 10 months, 16,000 miles were put on the RV. Dr. Galvin testified that he and his wife spent the winter in Arizona and New Mexico staying at RV parks or Elks Lodges. The RV tows the Smartcar which, together with bicycles, are used for local transportation.
THE COLORADO HOMESTEAD EXEMPTION
Colorado has opted out of the federal exemptions provided in 11 U.S.C. § 522(d). Exemptions available to Colorado residents are limited to those set forth in the statutes of the state. See C.R.S. § 13-54-107. The Colorado Homestead Exemption is found at C.R.S. § 38-41-201(1) :
Every homestead in the state of Colorado shall be exempt from execution and attachment arising from any debt, contract, or civil obligation not exceeding in actual cash value in excess of any liens or encumbrances on the homesteaded property in existence at the time of any levy of execution thereon:
(a) The sum of seventy-five thousand dollars if the homestead is occupied as a home by an owner thereof or an owner's family; or
(b) The sum of one hundred five thousand dollars if the homestead is occupied as a home by an elderly or disabled owner, an elderly or disabled spouse of an owner, or an elderly or disabled dependent of an owner.
The larger monetary figure is available to owners who are older than sixty years of age. C.R.S. § 38-41-201(2). Dr. Galvin is seventy-six years old and entitled to claim the higher exemption amount.
Structurally, the Homestead Exemption arises in the Colorado Revised Statutes among articles concerning real property. However, in 1982 the Colorado Legislature expanded the exemption to include mobile homes. The expansion was accompanied by the following legislative declaration set forth in C.R.S. § 38-41-201.5 :
The general assembly hereby finds and declares that, as the cost of conventional housing continues to escalate, mobile homes will become an ever larger percentage of the total housing supply, particularly for the elderly and the low-to-moderate income groups; that the purchase of a mobile home is a major investment; that most mobile homes are *266 permanently or semi-permanently located; that great improvements have been made in the quality and variety of such homes; and that mobile homes are dwellings which should be accorded a status equivalent to conventional homes. The general assembly recognizes, however, that mobile homes are more readily moved than conventional homes; that they are presently bought and sold as personal property and that there are advantages to both the industry and consumers to continue this practice; and that they presently have a dual nature in the area of taxation and tax collection; therefore mobile homes should be entitled to a homestead exemption.
C.R.S. § 38-41-201.6 was simultaneously enacted creating the mobile home homestead exemption. The initial exemption was limited to mobile homes as defined under then current laws. In 1983 the Colorado Legislature created Article 29 of Title 38 recognizing manufactured homes and the statute was amended to include manufactured homes as well as mobile homes. In 2000 the statute was amended to include trailers and trailer coaches as additional items of personal property to which the homestead exemption applies.
Currently, C.R.S. § 38-41-201.6 reads as follows:
Mobile home, manufactured home, trailer, and trailer coach homestead exemption
(1) A manufactured home as defined in section 38-29-102 (6), which includes a mobile home or manufactured home as defined in section 38-12-201.5 (2), 5-1-301 (29), or 42-1-102 (106)(b), C.R.S., that has been purchased by an initial user or subsequent user and for which a certificate of title or registration has been issued in accordance with section 38-29-110 or pursuant to section 38-29-108, is a homestead and is entitled to the same exemption as enumerated in section 38-41-201, except for any loans, debts, or obligations incurred prior to January 1, 1983. For purposes of this homestead exemption, the term "house" as used in section 38-41-205 shall be deemed to include mobile homes or manufactured homes.
(2) A trailer as defined in section 42-1-102 (105), C.R.S., or a trailer coach as defined in section 42-1-102 (106)(a), C.R.S., that has been purchased by an initial user or subsequent user and for which a certificate of title or registration has been issued pursuant to section 42-3-103, C.R.S., is a homestead and is entitled to the same exemption as enumerated in section 38-41-201, except for any loans, debts, or obligations incurred prior to July 1, 2000. For purposes of this homestead exemption, the term "house" as used in section 38-41-205 shall be deemed to include trailers or trailer coaches.
Each expansion of the homestead exemption has been limited to expressly defined property.
C.R.S. § 42-1-102(105) defines a trailer as "...any wheeled vehicle, without motive power , which is designed to be drawn by a motor vehicle and to carry its cargo load wholly upon its own structure and that is generally and commonly used to carry and transport property over the public highways." (Emphasis added.)
C.R.S. § 42-1-102(106)(a) defines a trailer coach as "...a wheeled vehicle having an overall length, excluding towing gear and bumpers, of not less than twenty-six feet, without motive power , that is designed and generally and commonly used for occupancy by persons for residential purposes, in temporary locations, and that may occasionally be drawn over the public highways by a motor vehicle and is licensed as a vehicle." (Emphasis added.)
*267 C.R.S. § 42-1-102(106)(b) defines a manufactured home as a "... preconstructed building unit or combination of preconstructed building units, without motive power , where such unit or units are manufactured in a factory or at a location other than the residential site of the completed home, which is designed and commonly used for occupancy by persons for residential purposes, in either temporary or permanent locations, and which unit or units are not licensed as a vehicle." (Emphasis added.)
Mobile homes are defined in C.R.S. § 38-12-201.5(2) and C.R.S. § 5-1-301(29). Both definitions include the provision that to be drawn over public highways, a special permit is required.
ANALYSIS
The RV has motive power and is licensed as a motor vehicle. It requires no special permit to travel on roads or highways. The RV fits squarely within the definition of a motor home: "...a vehicle designed to provide temporary living quarters and which is built into, as an integral part of or a permanent attachment to, a motor vehicle chassis or van." C.R.S. § 42-1-102(57).
A similar factual situation was addressed in In re Romero , 533 B.R. 807 (Bankr. D. Colo. 2015), aff'd, Romero v. Tyson (In re Romero), 579 B.R. 551 (D. Colo. 2016). Mr. Romero was an independent long haul trucker. He owned a Peterbuilt Truck that was used as his abode. Like here, it was not disputed that the debtor lived in the vehicle and intended it to be his home.
In Romero, the Bankruptcy Court recognized "...the Colorado Constitution and an unbroken line of Colorado cases instruct that Colorado exemptions are to be construed liberally in favor of Colorado residents claiming such exemptions." 533 B.R. at 811. (Internal citations omitted).
In Romero , the Bankruptcy Court concluded the Peterbuilt Truck was not entitled to the protection of Colorado homestead exemption because it did not meet the statutory definition of a mobile home or a manufactured home. In addition, the Court examined the history of the homestead exemption and determined an association with real property is required. Id. at 816-817.
The holding was affirmed on appeal to the District Court. Specifically, the District Court held:
Although Colorado's homestead exemption is to be liberally interpreted, no reasonable interpretation of Colo. Rev. Stat. 38-41-201.6 can expand the exemption to dwellings, such as "motor homes," that the General Assembly chose not to include in the statute. The Court agrees with the bankruptcy court's application of the interpretative canon of expressio unius est exclusio alterius , and finds that the Colorado General Assembly, by including the statutory definitions of "mobile home," "manufactured home," "trailer," and "trailer coach" in its expansion of the homestead exemption to dwellings that are not tied to real property, intended to exclude other types of structures designed to serve as dwellings.
Romero v. Tyson (In re Romero) , 579 B.R. at 556. (Internal citations omitted.)
Contrary to the District Court's holding, Dr. Galvin argues his RV is actually a "manufactured home." Relying solely on C.R.S. § 38-29-102(6) he claims: "Unlike the definition of a trailer or trailer coach, which specifically excludes inclusion of a motor, a manufactured home does not have such limitations."
C.R.S. § 38-29-102(6) provides:
*268 "Manufactured home" means a preconstructed building unit or combination of preconstructed building units that is constructed in compliance with the federal manufactured home construction safety standard, as defined in section 24-32-3302 (13), C.R.S. "Manufactured home" shall also include a mobile home, as defined in section 24-32-3302 (24), C.R.S.
The argument ignores the express language of C.R.S. § 42-1-102(106)(b), requiring a manufactured home to be "without motive power," and, as the Trustee points out, ignores the requirement that a manufactured home be "...constructed in compliance with the federal manufactured safety standard." The federal definition of "manufactured home" expressly provides: "The term does not include any self-propelled recreational vehicle." 24 C.F.R. § 3280.2.
CONCLUSION
The RV is a motor home, not a manufactured home, and is not subject to the protections of the Colorado homestead exemption.
In 2015 the Colorado Legislature enacted Senate Bill 15-283. Section 6 of the Bill amended C.R.S. § 38-41-201 to raise the amount protected by the homestead exemption from sixty thousand dollars to seventy-five thousand dollars. For elderly or disabled owners, the exemption amount was raised from ninety-thousand dollars to one-hundred five thousand dollars.
Section 2 of the same Bill amended the motor vehicle exemption found at C.R.S. § 13-54-102(j) and added subsection (III): "The exemption provided in this paragraph (j) does not apply to snowmobiles, all-terrain vehicles, golf carts, boats or other watercraft, travel trailers, tent trailers, or motor homes."
The legislature was clearly aware of motor homes and could have amended the homestead exemption to cover motor homes as it previously had done with mobile homes, manufactured homes, trailers, and trailer coaches. It did not, and this Court agrees with the District Court: The Court is "limited to those exemptions expressly provided by the statutes of this state." Romero v. Tyson, 579 B.R. at 556. Even though it seems logical that all kinds of abodes should be exempt, that is a policy decision for the state legislature.
Accordingly, it is
ORDERED the Trustee's Objection to Property Claimed as Exempt (Docket #15) is SUSTAINED, and
IT IS FURTHER ORDERED confirmation of the Debtor's chapter 13 plan (Docket # 3) is DENIED, and
IT IS FURTHER ORDERED the Debtor shall have until March 23, 2018 to file an Amended Chapter 13 Plan, failing which the case will be dismissed.